UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL LEE, JR.,

    Petitioner,

v.

JEFF WHITE,

    Respondent.
_____/

Case No. 07-cv-15060

HONORABLE STEPHEN J. MURPHY, III

**ORDER ADOPTING REPORT AND RECOMMENDATION**
(docket no. 14)**, OVERRULING OBJECTIONS** (docket no. 18)**,**
**AND DENYING THE PETITION FOR HABEAS CORPUS** (docket no. 1)

    Nathaniel Lee, Jr. was convicted of conspiracy to possess with intent to deliver 650 grams or more of a controlled substance in Oakland County Circuit Court on October 18, 2002.  He is currently an inmate at the Mound Correctional Facility in Detroit, where he is serving a thirty- to sixty-year sentence on his convictions.  After pursuing all available avenues for appeal in the Michigan courts, he filed, pro se, a petition for a writ of habeas corpus with this Court, pursuant to 28 U.S.C. § 2254(a), raising four assignments of error.  The case was referred to a magistrate judge.  He issued a Report and Recommendation ("Report") urging the Court to deny the petition and a certificate of appealability.  Lee filed timely objections to the Report.[1]  After performing an appropriate review of the Report and

---

[1] Originally, Lee's objections did not appear on the docket because he mailed them to the chambers of the judicial officer assigned to this case and the magistrate judge, rather than filing them with the Clerk of the Court.  Due to this error, the Court entered an order denying the petition, without performing the sort of review that is required when a party makes specific objections to a report and recommendation, on April 28, 2010.  Lee filed a motion for reconsideration asking the Court to evaluate the Report in light of the objections, which, though incorrectly filed, were timely lodged.  The Court agreed, granted the motion for reconsideration, vacated its previous order, and reopened the case.  Order, June 1, 2010, ECF No. 19.

its findings, the Court will adopt the Report in full, deny the petition for habeas corpus, and deny the certificate of appealability.

## STANDARD OF REVIEW

Review of decisions on dispositive motions made by a magistrate judge is governed by Civil Rule 72(b). The district judge who referred the motion is required to perform de novo review of the magistrate judge's findings if the parties "serve and file specific written objections to the proposed findings and recommendations" in a timely manner. Fed. R. Civ. P. 72(b)(2). Lee has specifically and timely objected to all four of the recommended dispositions in the Report. The Court will therefore review each finding de novo.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern this case, since it was filed after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA provides that a writ of habeas corpus may only be granted if the state court reached "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §2254(d).

## DISCUSSION

I. <u>Sufficiency of the Evidence Supporting Lee's Conviction</u>

Lee argues that the Report erred in rejecting the claim that his conviction rested on a constitutionally-inadequate amount of evidence, because there was insufficient evidence for his criminal jury to find that he possessed the "specific intent" necessary to commit the crime. If the state court could have reasonably concluded that, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt," the grounds for the conviction are constitutionally sufficient. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Under Michigan law, the state had to prove (1) that Lee possessed the specific intent to deliver the statutory minimum as charged, (2) that his coconspirators possessed a specific intent to deliver the statutory minimum, and (3) that both Lee and the coconspirators possessed the specific intent to combine to deliver the statutory minimum as charged to a third person. *People v. Justice*, 454 Mich. 334, 349 (1997). These elements can be proven entirely by circumstantial evidence that "sheds light on the coconspirators' intentions." *Id.* ("[D]irect proof of the conspiracy is not essential . . . ."). Lee's objections are rather vague when it comes to identifying the particular type of "specific intent" the state did not prove, but based on his petition, he seems to be referring to the first element of the crime. Pet.'s Mem. of Law 9, Nov. 28, 2007, ECF No. 1 (characterizing the prosecution's evidence directly linking Lee to the conspiracy as an "afterthought").

Nonetheless, as the magistrate judge found, voluminous evidence introduced at trial showed that Lee was an active member of a large-scale drug dealership he ran with the help of his brothers. Report 15–17, Dec. 14, 2009, ECF No. 14 (summarizing this evidence); *see also People v. Lee*, No. 245255, 2004 WL 2877319, *1–5 (summarizing all of the evidence presented at trial).[2] This was established both through the testimony of those who were familiar with the business as customers and middlemen, and through physical evidence found in drug houses the police raided that linked Lee to the enterprise. Lee does not challenge the accuracy of the magistrate judge's summary of the facts; his

---

[2] The factual findings of the state court are presumed to be correct under 28 U.S.C. § 2254(e)(1), and Lee has not seriously challenged them here. *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

3

objections amount to little more than disagreement with the outcome. Because this objection has no merit, the Court will adopt the magistrate judge's recommendation on the first assignment of error.

II. Right of Confrontation

Lee also challenges the magistrate judge's rejection of his second assignment of error, a Confrontation Clause claim based on the introduction of statements at his trial made by Eric Lee ("Eric"), Nathaniel's nephew, before a grand jury. The grand jury testimony was introduced indirectly through Eric's appearance as a witness in Lee's preliminary examination for probable cause. Eric claimed not to remember any of his dealings with Lee, and the prosecutor used the grand jury transcript to impeach him. The vast majority of that testimony was read in open court through the prosecutor's questions. Lee was present and his lawyer cross-examined Eric. The Michigan Court of Appeals rejected Lee's argument that this was a Sixth Amendment violation, and also found that any error introduced was harmless in the context of the trial. The magistrate judge recommended denial of the habeas claim on harmless error grounds. The Court concludes that there was no Confrontation Clause violation in this case.

Statements made by a witness to a grand jury are part of the "core" set of "testimonial" statements that are covered by the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). In order to introduce such a statement at trial, the prosecution must establish (1) that the witness is unavailable to testify at trial, and (2) that the defendant had an adequate opportunity to cross-examine the witness on a prior occasion. *Id.* at 57. In this case, it is not open to dispute that Eric was unavailable to testify at trial, due to his invocation of his Fifth Amendment rights. *See California v. Green*, 399 U.S. 149, 168 (1970). The narrow question here is whether Eric's appearance at the preliminary

examination satisfied *Crawford*'s requirement that the defendant be given an adequate opportunity to cross-examine the witness.

Eric's appearance at the preliminary examination was problematic from the start. The prosecution had obtained use immunity for Eric in order to get him to testify at the preliminary examination. When he first took the stand, he attempted to avoid testifying by invoking the Fifth Amendment, under the theory that his immunity did not shelter him from federal charges. Prelim. Exam. Tr. 60, May 18, 2000, ECF No. 8-3 – 8-6. After a brief conference with the attorneys, the judge told Eric that he was mistaken, and that he had an obligation to testify truthfully in the preliminary examination. *Id.* at 65. Eric was allowed to interpose the following objection:

> There's something I want to address to the Court. You all saying that I'm protected, I'm not protected. After I'm being threaten — I'm threatened. My life is in danger. This is no immunity. This is not protecting me. If you lock me up, I'm still threatened. I'm threatened by the law. I was threatened to be locked up by [the prosecutor] if I don't testify. that is — that's the issue. That — that — what I'm saying is — what rights do I have — what rights do I have if I can't take the Fifth? I'm threatened either way I go. My life is in danger either way I go. In the street or in the system, my life is in danger. So what.

Prelim. Exam. Tr. 66.

The prosecution then began its direct examination. Eric answered "I don't remember," or other words to that effect, to every meaningful question the prosecutor posed. The prosecutor began reading back Eric's grand jury testimony to him to impeach his claim that he had forgotten his previous testimony. As a result, the direct examination consists almost entirely of the prosecutor reading the grand jury transcript to Eric, and Eric denying his recollection of any grand jury testimony or the incidents underlying that testimony. The grand jury transcript was eventually admitted into the record so the judge could have a "clean" copy of Eric's prior testimony. Prelim. Exam. Tr. 94–95. At roughly the halfway point of the direct examination (after the court went into recess for the day, reconvened,

5

and called several other witnesses), the prosecutor tried to clarify what Eric meant when he said there were "threats" against him and that he "could not win." Eric's rambling, argumentative exchange with the prosecutor sheds little light on his reasons for "not remembering." *Id.* at 262–69.

On cross-examination, Eric held firm to the position that he did not remember either his grand jury testimony or his drug-dealing activities. *Id.* at 295. He also indicated that the testimony he gave may have been "suggested" to him by investigators. *Id.* at 295–96. But when pressed on the subject of who might have suggested testimony during the prosecutor's redirect examination, Eric fell back on a pattern of forgetting everything and accusing the prosecutor of "threatening" him. *Id.* at 299–300. As far as the Court can tell from the transcript, Eric appeared to believe he was trapped between (1) staying in jail for not cooperating with law enforcement, and (2) being subject to a vague threat of social rejection or reprisals from his friends and family as a result of "snitching." After being told he could not hide under a Fifth Amendment privilege, he never attempted to assert his right to self-incrimination, and was adamant that he had indeed "forgotten" all of his previous testimony.

At Lee's trial, Eric exercised the Fifth Amendment to avoid testifying, and this time, the prosecution did not seek to compel his testimony by obtaining immunity. Nonetheless, in order to allow the jury to hear Eric's "testimony," it introduced the transcript of Eric's appearance before the preliminary examination as evidence. The Michigan Court of Appeals agreed that this was proper. It relied heavily upon *People v. Chavies*, 234 Mich. App. 274 (1999), *rev'd on other grounds*, *People v. Williams*, 475 Mich. 245 (2006), to justify this decision. In that case, which also addressed witnesses who became recalcitrant after testifying freely in front of a grand jury, the Michigan Court of Appeals held, under

6

*United States v. Owens*, 484 U.S. 554, 559 (1988), that witnesses are "available" for cross-examination in a preliminary hearing even if they make claims of false memory loss that are likely untrue. *Lee*, 2004 WL 2877319, at *6. One judge concurred in the result only, arguing that "Eric was not realistically available for cross-examination at the preliminary examination," and that the "grand jury testimony was never truly subjected to cross examination," but found the error harmless. *Id.* at *8–9 (Gage, J., concurring in the judgment).

In *Owens,* the victim giving the challenged testimony had *actual* memory loss that was caused by an alleged beating he received by the defendant's hand. *Owens*, 484 U.S. at 556. The Court ruled that in such cases, the defendant has received an "opportunity" to cross-examine if the witness is placed on the stand and made subject to cross-examination. The proper remedy to testimony that is incomplete due to memory loss is not exclusion, but the defendant's opportunity to bring out reasons why the testimony might be unreliable, such as a poor memory. *Id.* at 842–43. The Supreme Court has never addressed the issue of whether *feigned* memory loss, like Eric's should be treated like genuine memory loss. That narrow issue is before the Court in this case.

The lower courts that have applied *Owens* in cases like Lee's are nearly unanimous in finding that feigned memory loss is treated just like genuine memory loss for Confrontation Clause purposes. The leading decision in this area is *United States v. Keeter*, 130 F.3d 297 (7th Cir. 1997). In that case, a witness that cooperated with investigators during an investigation later became recalcitrant and warned that he would "testify that he had forgotten everything" if he took the stand in the defendant's trial. *Keeter*, 130 F.3d at 302. He was indeed called to the stand, and did as he promised. *Id.* The prosecutors worked around the problem by offering into evidence an affidavit the

7

witness signed while cooperative. *Id.* The Seventh Circuit affirmed. It reasoned that a witness that feigns amnesia tends to show that his prior testimony was dishonest, opportunistic, and self-interested, which significantly undermines its effectiveness. The court concluded that "[t]he opportunity for confrontation conferred greater benefits on [the defendant] than on Owens," who was faced with a witness that was attempting to be honest, but could not testify as to the basis of his beliefs due to factors beyond his control. *Id.*

The New Hampshire and Indiana Supreme Courts, as well as the California Court of Appeals, reached similar conclusions when presented with this issue. *See State v. Legere*, 157 N.H. 746 (2008) (upholding introduction of prior statement of a witness that feigned memory loss over a federal Confrontation Clause objection because the availability requirement was satisfied when witness took the stand, "[r]egardless of the authenticity of [her] memory loss"); *Fowler v. State*, 829 N.E.2d 459, 466 (Ind. 2005) ("The feigned or real absence of memory . . . does not render the witness unavailable. Rather, as *Owens* explained, it is a factor for the trier of fact to consider in evaluating the witness's current and earlier versions."); *People v. Gunder*, 151 Cal. App. 4th 412, 420 (2007) ("The witness feigning memory loss is in fact subject to cross-examination, providing a jury with the opportunity to see the demeanor and assess the credibility of the witness . . . ."). In a case addressing false assertions of privilege, the Tenth Circuit distinguished witnesses that feigned memory loss, who are considered "available" under *Owens*, from those who repeatedly, and incorrectly, invokes the Fifth Amendment to avoid testifying, who should not be so classified. *United States v. Torrez-Ortega*, 184 F.3d 1128, 1134 (10th Cir. 1999).

The Court agrees that Lee's right to confrontation was not violated when the transcript of Eric's preliminary examination was placed into evidence. An opportunity for cross-

examination, as opposed to an opportunity for *effective* cross-examination, is all that the Confrontation Clause requires. Lee had such an opportunity here, and, in some senses, it was extremely effective, as the preliminary examination showed that Eric's testimony was highly unreliable. His objection should therefore be overruled.[3]

III. Sentencing Challenges

Next, Lee challenges the rejection of his arguments regarding the state court's decision to sentence him to 30–60 years in prison. In the habeas petition, Lee argued that the state court judge failed to properly consider the appropriate sentencing factors or Lee's presence report, and did not give Lee an "individualized" sentence. Lee also claims that his sentence was disproportionate to the crime he committed. The magistrate judge rejected all of these claims. The Court agrees that presentence reports and sentencing factors are matters of state law which cannot form a basis of relief in habeas, that Lee was not entitled to an individualized sentence under *Harmelin v. Michigan*, 501 U.S. 957, 996 (1991), and that Lee's sentence did not violate *Harmelin*'s requirement of "proportionality" in criminal sentencing. None of these recommendations were in error, and the Court will adopt them over Lee's objections.

IV. Prosecutorial Misconduct

Lee's final assignment of error ought to be rejected as well. During closing arguments, the prosecutor told the jury that Lee did not need to know the full scope of the conspiracy he was charged with, either as to the people involved in it or the activities it engaged in. The Michigan Court of Appeals found that this was a correct statement of the law of conspiracy. The magistrate judge agreed, and so does this Court. Moreover, even if the

---

[3] Additionally, the Court agrees with the magistrate judge's conclusion that regardless of whether the preliminary examination transcript was properly introduced at trial, any error arising from introduction of the transcript was harmless. Report 18–21.

9

statement had been error, the standard jury instructions regarding the value of attorney argument, along with the unchallenged jury instructions, require dismissal of this claim.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that the Report (docket no. 14) is **ADOPTED**, and Lee's objections (docket no. 18) are **OVERRULED**. Accordingly, the petition for habeas corpus (docket no. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**, for the reasons stated in the Report.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 28, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 28, 2011, by electronic and/or ordinary mail.

Carol Cohron
Case Manager